## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ALAN ROBERT BENNETT, JR.,

      Petitioner,

      v.

COMMONWEALTH OF
PENNSYLVANIA,

      Respondent.

CIVIL ACTION NO. 1:14-cv-01837

(KANE, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

On September 22, 2014, the Court received and filed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and dated by the petitioner, Alan Robert Bennett, Jr., on September 16, 2014. (Doc. 1). At the time of filing, Bennett was incarcerated at SCI Fayette, which is located in Fayette County, Pennsylvania.

### I.  STATEMENT OF THE CASE

#### A. Procedural History

On June 29, 2009, following a jury trial, Bennett was convicted in the Court of Common Pleas of Snyder County on two counts each of aggravated assault resulting in serious bodily injury, aggravated assault with a deadly weapon, simple assault, and recklessly endangering another

person. *Commonwealth v. Bennett*, Docket No. CP-55-CR-0000393-2008 slip op. at 1 (Snyder County C.C.P. Dec. 16, 2009) (Doc. 12-1).[1] On August 24, 2009, Bennett was sentenced to serve two consecutive sentences of ninety months to twenty years in prison, for an aggregated term of fifteen to forty years imprisonment.[2] *Id.* at 2. On August 3, 2010, his conviction and sentence were affirmed by the Superior Court of Pennsylvania on direct appeal. *Commonwealth v. Bennett*, No. 1660 MDA 2009, slip op. (Pa. Super. Ct. Aug. 3, 2010) (Doc. 12-2). He did not file a petition for allocatur with the Supreme Court of Pennsylvania.

The petitioner subsequently filed a *pro se* PCRA petition in the state trial court on August 1, 2011. (*See* Doc. 1, at 3; Doc. 12-3, at 13). His PCRA petition was denied on its merits by the PCRA court on April 29, 2013. *Commonwealth v. Bennett*, Docket No. CP-55-CR-0000393-2008 slip op. (Snyder County C.C.P. Apr. 29, 2013) (Doc. 12-5). The petitioner timely

---

[1] In addition to the petition, a federal habeas court may take judicial notice of state and federal court records. *Montanez v. Walsh*, Civil Action No. 3:CV-13-2687, 2014 WL 47729, at *4 n.1 (M.D. Pa. Jan. 7, 2014); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988).

[2] These two consecutive sentences were imposed with respect to the two counts of aggravated assault resulting in serious bodily injury. Each of the other six counts merged with one of these two counts for sentencing purposes.

appealed to the Superior Court of Pennsylvania, which affirmed the state trial court's order denying PCRA relief on April 15, 2014. *Commonwealth v. Bennett*, No. 951 MDA 2013, 2014 WL 10965414 (Pa. Super. Ct. Apr. 15, 2014) (Doc. 12-8). The petitioner timely filed a petition for allocatur with the Supreme Court of Pennsylvania, which was summarily denied on September 9, 2014. *Commonwealth v. Bennett*, 99 A.3d 923 (Pa. 2014) (table decision) (Doc. 12-9).

Bennett filed the instant *pro se* federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 16, 2014.[3] (Doc. 1; *see also* Doc. 4). On June 10, 2015, the respondent filed its answer to the petition. (Doc. 12). On June 23, 2015, Bennett filed his reply. (Doc. 19).

## B. Habeas Claims Presented

Liberally construed, *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants), the *pro se* petition has

---

[3] The instant petition was received and docketed by the Court on September 22, 2014, but it appears to have been deposited in the prison mail system on September 16, 2014, and thus effectively filed that day. *See* Rule 3(d), 28 U.S.C. foll. § 2254.

asserted that Bennett is entitled to relief under 28 U.S.C. § 2254 for the following reasons:

(1)  Bennett is actually innocent of the offenses for which he was convicted, based on after-discovered evidence;

(2)  Bennett was denied effective assistance of counsel in trial proceedings because his court-appointed trial counsel failed to request transcripts of a preliminary hearing, which Bennett contends would have permitted counsel to impeach the testimony of certain witnesses at trial;

(3)  Bennett was denied effective assistance of counsel in trial proceedings because his court-appointed trial counsel failed to adequately investigate the criminal history and driving records of certain prosecution witnesses, and failed to obtain a copy of a blood-alcohol-content test administered to Bennett hours after the offenses of conviction;

(4)  Bennett was denied effective assistance of counsel in trial proceedings and on direct appeal because his court-appointed trial and appellate counsel failed to advance a claim that his conviction was based on insufficient evidence;

(5) Bennett was denied effective assistance of counsel in trial proceedings and on direct appeal because his court-appointed trial and appellate counsel failed to advance a claim that the state sentencing court's imposition of consecutive terms of ninety months to twenty years imprisonment arising from a single incident violated his Fifth Amendment right against double jeopardy; and

(6) Bennett was denied effective assistance of counsel in trial proceedings and on direct appeal because his court-appointed trial and appellate counsel failed to advance a claim that a post-indictment delay in commencing his trial violated his right to a speedy trial under the state speedy trial rule, Pa. R. Crim. P. 600, and under the Sixth Amendment to the United States Constitution.[4]

---

[4] In setting forth this claim in his petition, Bennett has asserted that his Fourteenth Amendment due process rights and his Eighth Amendment right against excessive bail also formed the basis of his underlying claim. But "[w]hereas due process considerations generally govern pre-indictment delay, post-indictment delay implicates the Sixth Amendment speedy trial guarantee." *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006); *United States v. Sandoval*, 990 F.2d 481, 485 n.8 (9th Cir. 1993). For post-indictment delay to violate substantive due process, it must involve both
*(continued on next page)*

Bennett raised all six of these claims in his PCRA appeal before the Superior Court, which denied them all on the merits.

## II.   DISCUSSION

A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). In drafting this statute, Congress "plainly sought to

---

prosecutorial misconduct and actual, substantial prejudice, neither of which has been alleged here. *See United States v. Batie*, 433 F.3d 1287, 1293 (10th Cir. 2006); *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993); *cf. United States v. Marion*, 404 U.S. 307, 325–26 (1971) (allegation or proof of actual prejudice required for pre-indictment delay to constitute due process violation). Moreover, other than the fact of his extended pretrial detention due to an inability to post the $100,000 bail imposed, the petitioner fails to articulate any non-conclusory allegations to suggest that the pre-trial bail imposed by the state court here was an abuse of discretion or unconstitutionally arbitrary. *See Fakhouri v. Thompson*, 2014 WL 4165635, at *22 (M.D. Pa. Aug. 20, 2014). Accordingly, we have construed the claim underlying his ineffective assistance claim as a run-of-the-mill speedy trial claim. In addition, we note that, although the instant federal habeas petition appears to frame this as a claim directed at appellate counsel only, in his state PCRA proceedings, Bennett appears to have asserted this same claim with respect to both trial and appellate counsel, and we have liberally construed it here to do so as well.

ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *see also Eley v. Erickson*, 712 F.3d 837, 846 (3d. Cir. 2013). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 387. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 411; *see also Eley*, 712 F.3d at 846. Moreover, any factual findings by the state trial and appellate courts are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013); *Eley*, 712 F.3d at 846.

Because the Supreme Court of Pennsylvania summarily denied allocatur, this Court looks to the disposition of his PCRA appeal by the Superior Court of Pennsylvania as the last reasoned state judgment on

this claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Moreover, although the Superior Court's decision was not a summary disposition, it expressly adopted the reasoning of the PCRA court by reference. *See Bennett*, 2014 WL 10965414, at *4. Accordingly, we also look to the PCRA court's opinion.

## A. Actual Innocence / After-Discovered Evidence Claim

In claim (1), Bennett contends that he is entitled to a new trial (or outright release) based on "new exculpatory evidence" not available to the petitioner at the time of his criminal trial proceedings. Bennett was convicted on two counts of aggravated assault resulting in serious bodily injury arising out of an incident in October 2008. After Bennett and his friend, Keith Reagan, had been smoking marijuana and drinking beer, they visited a "gentlemen's club" named Wild J's. Bennett and Reagan were asked to leave the club. Outside, Reagan was involved in a verbal exchange with one or more members of the club's security staff. Two members of the security staff, Ervin Pate and Shawn Gelnett, testified at trial that they saw Reagan get into a vehicle, and Pate testified that he saw Bennett in the driver's seat. The vehicle then began to depart the premises, but as it approached Pate and Gelnett, it accelerated rapidly and

turned toward them, striking both of them. Reagan testified at trial that Bennett was driving the vehicle at the time it struck the two security staff members. *See generally Bennett*, 2014 WL 10965414, at *1–*2 (summarizing the facts of Bennett's criminal case).

Bennett claims that sometime after the trial, Reagan admitted to another individual, Jason Frantz, that it was he, Reagan, who had caused the vehicle to strike Pate and Gelnett by placing his hand on the steering wheel and directing it toward the victims. Frantz later relayed this information to Bennett's mother, and he later testified to the same effect before the PCRA court. In his PCRA petition, Bennett had asserted an after-discovered evidence claim pursuant to 42 Pa. Cons. Stat. Ann. § 9543(a)(2)(vi).

Generally, a claim based on after-discovered evidence is non-cognizable in a federal habeas case because it rests on state rather than federal law. *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004). "It has long been recognized that claims of actual innocence based on newly discovered evidence are never grounds for federal habeas relief absent an independent constitutional violation." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)) (brackets and internal quotation marks omitted). For

example, a petitioner might assert a due process claim based on a theory that a state court's failure to properly consider purported after-discovered evidence "undermined the fundamental fairness" of his entire trial. *See Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012); *McKinney v. Walsh*, Civil Action No. 11-cv-5398, 2012 WL 706998, at *2 (E.D. Pa. Mar. 6, 2012).

But Frantz's PCRA testimony does not implicate the fundamental fairness of Bennett's entire trial. Frantz was not concealed from Bennett prior to or during his trial proceedings—indeed, he had not yet acquired the information about which he later testified. *See McKinney*, 2012 WL 706998, at *2. Moreover, even if he had testified at trial, it is not at all clear that his testimony about Reagan's admission would have outweighed the testimony of the prosecution witnesses, which clearly established that Bennett was operating the vehicle. *See id.*

Accordingly, it is recommended that the petition be denied on the merits with respect to Bennett's claim (1), that he is actually innocent of the offenses for which he was convicted based on after-discovered evidence.

## B. Ineffective Assistance of Counsel Claims

In claims (2), (3), (4), (5), and (6), Bennett claims that he was denied

the effective assistance of counsel at trial and on direct appeal. In affirming the PCRA court's denial of PCRA relief, the Superior Court rejected these claims on their merits and expressly adopted the reasoning set forth in the PCRA court's opinion, which applied a three-pronged Pennsylvania standard for judging ineffectiveness claims set forth in *Commonwealth v. Marinelli*, 810 A.2d 1257, 1267 (Pa. 2002), which the Third Circuit and this Court have previously found to be substantively identical to the two-pronged federal ineffectiveness standard enunciated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Boyd v. Waymart*, 579 F.3d 330, 334 n.2 (3d Cir. 2009); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Showers v. Beard*, 586 F. Supp. 2d 310, 321–22 (M.D. Pa. 2008). Accordingly, this Court may not grant relief unless it determines that the state appellate court's decision on the merits was an unreasonable application of *Strickland*, or that it was based on "unreasonable factual determinations when deciding whether the petitioner received constitutionally effective counsel." *Showers*, 586 F. Supp. 2d at 322.

Under *Strickland*, a habeas petitioner is required to establish two elements to state a successful claim for ineffective assistance of counsel: (1)

"that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The *Strickland* test is conjunctive and a habeas petition must establish both the deficient performance prong as well as the prejudice prong. *See id.* at 687; *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010). But, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id.* at 687–89. This requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2001) (quoting *Strickland*, 466 U.S. at 687). When a federal habeas petitioner advances an ineffective assistance of counsel claim that a state court has already rejected on its merits, he is faced with "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Under this "doubly deferential" standard, the Court must "give[] both the

state court and the defense attorney the benefit of the doubt." *Burt*, 134 S. Ct. at 13. Indeed, a federal habeas court is "required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did." *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011)) (alterations omitted).

With respect to the prejudice prong of the *Strickland* test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 1. Failure to Request Transcript of Preliminary Hearing

In claim (2), Bennett claims that trial counsel was ineffective because he failed to request transcripts of a preliminary hearing, which Bennett contends would have permitted counsel to impeach the testimony of Pate and Gelnett at trial. Bennett claims that both testified at the preliminary hearing that they were unable to see who was driving the vehicle due to darkness, but then Pate testified at trial that Bennett was the driver.

The Superior Court and the PCRA court considered Bennett's ineffectiveness claim with respect to defense counsel's failure to request

that a preliminary hearing be transcribed and held that he failed to satisfy the "prejudice" prong of the ineffective assistance standard. The state courts held that, although state rules of criminal procedure afforded Bennett a right to make a record of the preliminary hearing, defense counsel's failure to request that the preliminary hearing be recorded or transcribed did not itself constitute ineffective assistance of counsel because it did not "implicate the truth determining process." (Doc. 12-5, at 10). *See generally Commonwealth ex rel. Dadario v. Goldberg*, 773 A.2d 126, 130 (Pa. 2001) (holding that the PCRA's reference to constitutional violations that "'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place' merely represents a statutory adoption of the prejudice standard for Sixth Amendment ineffective assistance of counsel claims as developed in *Strickland*.") (citing *Commonwealth v. Kimball*, 724 A.2d 326, 332 (Pa. 1999)). In particular, it must be noted that, in addition to the testimony of victims Pate and Gelnett, the record before the state appellate court and the state PCRA court included trial testimony by Keith Reagan, a passenger in the vehicle, identifying Bennett as the driver. Based on this record, there is nothing to suggest that the state courts unreasonably

determined that prejudice was lacking, nor is there anything to suggest an unreasonable determination of the facts by the state courts. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of the case in an objectively unreasonable manner.").

Accordingly, it is recommended that the petition be denied on the merits with respect to Bennett's claim (2), that trial counsel was ineffective because he failed to request that Bennett's preliminary hearing be transcribed or recorded.

### 2. Failure to Obtain Certain Pre-Trial Discovery

In claim (3), Bennett claims that trial counsel was ineffective because he failed to adequately investigate the criminal history of prosecution witnesses Pate and Gelnett for impeachment purposes, he failed to adequately investigate the driving record of prosecution witness Reagan for impeachment purposes, and he failed to obtain a copy of a blood-alcohol-content test administered to Bennett hours after his arrest, which he believes would support a claim that the prosecution abused its discretion in declining to also charge Bennett with the lesser charge of

aggravated assault by vehicle while driving under the influence.[5]

The Superior Court and the PCRA court considered Bennett's ineffectiveness claim with respect to defense counsel's failure to obtain disclosure of criminal histories for prosecution witnesses Pate and Gelnett, and of the driving record for prosecution witness Keith Reagan. The state PCRA court, whose reasoning was explicitly adopted by the appellate court by reference, denied this claim on its merits, finding:

> [PCRA] counsel states that there is no evidence that trial counsel was not provided requested discovery. In fact, original defense counsel Robert Steinberg was provided discovery as he requested. It was also established at the PCRA hearing that trial counsel Helm made an informal request for discovery of the criminal histories of the Commonwealth witnesses, and that he received the same. . . . There was no evidence presented during the PCRA hearing that counsel was "surprised" by Commonwealth witnesses for which a criminal history was not supplied. Defendant's claim lacks merit.

(Doc. 12-5, at 17). Although the PCRA court did not expressly address Reagan's driving record beyond including it in the caption for this section of its opinion (presumably including it within the scope its general finding that all requested discovery was received by defense counsel), there was no

---

[5] Bennett contends that a jury might have acquitted him of the more serious charges for which he was convicted if given the alternative of this lesser charge.

evidence in the record before the state courts to suggest that such information would have been material to Bennett's defense: Reagan and Pate testified that it was Bennett, not Reagan, who was driving that night; Frantz testified only that Reagan admitted to having placed his hand on the steering wheel while Bennett drove it; and Bennett's proffer of evidence in this proceeding is that Reagan's driving record would reveal that his driver's license was suspended. Bennett has failed to demonstrate "a reasonable probability that, but for counsel's [failure to obtain these materials], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Superior Court and the PCRA court also considered Bennett's ineffectiveness claim with respect to defense counsel's failure to obtain a copy of a blood-alcohol-content test administered to Bennett hours after his arrest. The state PCRA court, whose reasoning was explicitly adopted by the appellate court by reference, denied this claim on its merits, finding:

> Defendant claims that because of his BAC level (.085%) he should have been charged with Aggravated Assault by Vehicle/DUI, [a] violation of 75 Pa. C.S.A. § 3735.1 and related charges, a less serious offense than Aggravate Assault. . . . We side with defense counsel's assessment [in his *Finley* no-merit argument] that the decision as to

> what charges to file is a matter of prosecutorial
> discretion. . . . A defendant certainly can challenge
> charges for which there is no *prima facie* case. But we are
> aware of no legal requirement that a prosecutor *must*
> include in an information all possible charges that might
> be brought against a defendant.

(Doc. 12-5, at 17–18). We agree with the analysis of our sister court in

Wisconsin, which was presented with substantively the same claim:

> Different charges carry different punishments and
> deciding who to charge with what, so long [as] it is not
> based upon "an unjustifiable standard such as race,
> religion, or other arbitrary classification," is a matter of
> prosecutorial discretion upon which a court cannot
> intrude. Therefore, because this argument would have
> been unsuccessful, [defense counsel] was not ineffective
> for failing to raise it. Accordingly, this court is unable to
> conclude that the [state court's] decision that [defense]
> counsel was not ineffective was contrary to or involved an
> unreasonable application of clearly established federal
> law as determined by the Supreme Court.

*Lynch v. Jenkins*, No. 09-C-1135, 2010 WL 5437224, at *9 (E.D. Wis. Dec.

23, 2010) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1995));

*see also Webster v. Epps*, No. 2:04CV84-M-B, 2006 WL 3258946, at *4

(N.D. Miss. Jan. 25, 2006) (noting that "[t]he decision of whether to pursue

a particular charge in an indictment is a matter of prosecutorial

discretion" rather than a substantive right of the defendant, and finding

that failure of defense counsel to raise such a meritless issue does not

constitute ineffective assistance of counsel).

Accordingly, it is recommended that the petition be denied on the merits with respect to Bennett's claim (3), that trial counsel was ineffective because he failed to adequately investigate the criminal histories and driving records of certain prosecution witnesses, and he failed to obtain a copy of a blood-alcohol-content test administered to Bennett hours after his arrest.

### 3. Sufficiency of the Evidence

In claim (4), Bennett claims that his trial counsel was ineffective because he failed to advance a claim that Bennett's conviction was based on insufficient evidence. In particular, Bennett claims that trial counsel should have moved for judgment of acquittal challenging the sufficiency of the evidence to establish that he had intentionally, knowingly or recklessly swerved his vehicle into the victims, as opposed to merely negligently, and that he should have moved for a new trial contending that the verdict was against the weight of the evidence, based on the same grounds.

The Superior Court and the PCRA court considered Bennett's ineffectiveness claim with respect to trial counsel's failure to advance a claim that Bennett's conviction was based on insufficient evidence. The

state PCRA court, whose reasoning was explicitly adopted by the appellate

court by reference, denied this claim on its merits, finding:

> [These claims] both depend on an assessment that but for
> counsel's failure to make either a motion for judgment of
> acquittal or a motion for new trial, the outcome of the
> trial would have been different.
>
> The evidence was more than sufficient to allow the
> jury to find that the Defendant was driving the
> automobile which hit the victims, that his swerving of the
> vehicle was done "intentionally, knowing, or recklessly,"
> and that the victim—Gelnett—suffered serious bodily
> injury. The trial testimony . . . showed that the
> Defendant had been ordered to leave Wild J's by[] Ervin
> Pate, one of the victims, and that they exchanged words.
> Pate saw the Defendant get into the vehicle. Sean
> Gelnett, the other victim, testified that "Keith" got into
> the passenger side of the vehicle. Keith Reagan testified
> that he got into the passenger seat and that the
> Defendant was the driver. He further stated that the
> Defendant swerved the car into the two victims, which
> the victims confirmed in their testimony. Donald Oakley
> testified that following the incident the Defendant told
> him that he had hit a deer as an explanation for damage
> to the vehicle . . . . The credibility of each of the described
> witnesses was accepted by the jury, and accordingly,
> supported the verdict. Simply because the defendant
> chooses to give the evidence a different interpretation is
> not tantamount to ineffective assistance of counsel since
> counsel has no duty to pursue a meritless claim.

(Doc. 12-5, at 12–13 (citations omitted)). In the margin, the PCRA court

noted: "Defendant makes much of the testimony of the Defendant's brother

that the dome light of the Blazer was broken, in contradiction of Pate's

testimony. The jury, obviously, chose to disbelieve the brother's testimony." (*Id.* at 13 n.4).

There is nothing in the record to suggest that adjudication on the merits by the state courts resulted in a decision that was based on an unreasonable determination of the facts, nor is there anything to suggest that adjudication on the merits by the state court was contrary to, or an unreasonable application of, clearly established federal law. On its face, the state PCRA court's rationale, explicitly adopted by the appellate court, is a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which provides the controlling standard for evaluating ineffective assistance claims, and *Jackson v. Virginia*, 443 U.S. 307 (1979), which provides the controlling standard for evaluating insufficient evidence claims. *See id.* at 319 (holding that, on federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original). Because the record before the PCRA court contained sufficient evidence for a reasonable factfinder to find the essential elements of the several offenses for which Bennett was convicted, his insufficient evidence claim is

meritless, and his ineffective assistance claim premised upon this meritless insufficient evidence claim is likewise meritless.

Accordingly, it is recommended that the petition be denied on the merits with respect to Bennett's claim (4), that trial counsel trial counsel was ineffective because he failed to advance a claim that Bennett's conviction was based on insufficient evidence.

### 4. Double Jeopardy Claim

In claim (5), Bennett claims that trial and appellate counsel were ineffective because they failed to advance a claim that the state sentencing court's imposition of consecutive terms of ninety months to twenty years imprisonment—one term for each victim—violated his Fifth Amendment right against double jeopardy. Bennett contends that these two separate counts of aggravated assault should have been merged for sentencing purposes because they involved the same assault, and thus both counts arise from the same criminal act.

The Superior Court and the PCRA court considered Bennett's ineffectiveness claim with respect to trial and appellate counsel's failure to advance a double jeopardy claim. The state PCRA court, whose reasoning was explicitly adopted by the appellate court by reference, denied this

claim on its merits, finding:

> The Defendant claims that he was sentenced eight times for one unlawful act, and that multiple sentences for a single act are illegal and violate the double jeopardy clause—the Fifth Amendment of the U.S. Constitution. The Defendant bases his argument upon a statutory interpretation that if the statute prohibits injury to "the person," then a defendant may be punished separately for each victim. But if the statute prohibits injury "to one or more persons," then a defendant may be punished only once regardless of the number of victims. . . . Defendant contends "another" [as used in this statute] as meaning "one or more[]" [s]o the statute is already inclusive o[f] "more than one." He asserts there is only one punishment, regardless of the number of victims.
>
> Defense counsel undertook in her brief a thorough analysis of the statutory interpretation issue. [(Doc. 12-3, at 55–57).] She concluded that the use of the word "another" in the statute means "one person." Otherwise the legislature would have used the word "others" in the statute. We agree with counsel's analysis.

(Doc. 12-5, at 16 (footnote omitted)).

In this claim, Bennett does not dispute the basic facts of his conviction—that he drove toward and struck the two victims with his vehicle. Rather, he contends that his conviction on two separate counts of aggravated assault resulting in serious bodily injury, and the imposition of consecutive sentences for those assault convictions, violates the federal Double Jeopardy Clause because this constitutes double punishment for

the same criminal offense. However, there is nothing in the record before this Court to suggest that adjudication on the merits by the state court resulted in a decision that was based on an unreasonable determination of the facts, nor is there anything in the record to suggest that adjudication on the merits by the state court was contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

The state court's rationale is a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which provides the controlling standard for evaluating ineffective assistance claims, and *Missouri v. Hunter*, 459 U.S. 359 (1983), which provides the controlling standard for evaluating double jeopardy claims involving cumulative sentences imposed in a single trial proceeding. *See id.* at 365–69. In *Hunter*, the Supreme Court of the United States held that, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter*, 459 U.S. at 366; *see also Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984) ("Even if the crimes are the same under *Blockburger* [*v. United States*, 284 U.S. 299 (1932)], if it is evident that a state legislature intended to authorize cumulative punishments, a court's

inquiry is at an end."). The Pennsylvania statute at issue provides that "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . ." 18 Pa. Cons. Stat. Ann. § 2702(a)(1). We are unable to locate any published decision of the Pennsylvania courts examining this Pennsylvania statute and the legislative intent behind it. But in the context of other criminal statutes, Pennsylvania state courts have employed a similar interpretation of the word "another" as that found by the PCRA court in this case. *See Commonwealth v. Gillard*, 850 A.2d 1273, 1276 (Pa. Super. Ct. 2004) (finding the use of "another" in defining the crime of robbery to mean "one person," and noting that "had the legislature intended to preclude multiple punishments, it could have defined robbery as 'threatening another person or persons during the course of a theft,'"). This federal habeas court must defer to the state court's determination, as a matter of first impression, that the state legislature intended to authorize cumulative punishments in such circumstances. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *see also Johnson*, 467 U.S. at 499

("We accept, *as we must*, the Ohio Supreme Court's determination that the

Ohio legislature did not intend cumulative punishment for the two pairs of

crimes involved here.") (emphasis added). Because the record establishes

that Bennett struck two separate victims with his vehicle, his conviction

on separate counts of aggravated assault and the imposition of consecutive

sentences does not violate the federal Double Jeopardy Clause, and his

ineffective assistance claim premised upon this meritless double jeopardy

claim is likewise meritless. *See Williams v. McGrady*, No. 09-CV-5040,

2011 WL 62791, at *2 (E.D. Pa. Jan. 4, 2011); *Jarmon v. Klem*, No. 04-

5122, 2007 WL 3132808, at *9 (E.D. Pa. Oct. 26, 2007).

Accordingly, it is recommended that the petition be denied on the

merits with respect to Bennett's claim (5), that trial and appellate counsel

were ineffective because they failed to advance a claim that the state

sentencing court's imposition of two consecutive terms of ninety months to

twenty years imprisonment violated his Fifth Amendment right against

double jeopardy.

### 5. Speedy Trial Claim

In claim (6), Bennett claims that his trial and appellate counsel were

ineffective because they failed to advance a claim that that a post-indictment delay in commencement of his trial violated his right to a speedy trial under the state speedy trial rule, Pa. R. Crim. P. 600, or under the Sixth Amendment to the United States Constitution. Criminal proceedings commenced when a criminal complaint was filed against Bennett on October 27, 2008. A jury was empaneled 168 days later, following voir dire on April 13, 2009. Bennett's jury trial began on June 29, 2009, a total of 245 days after the criminal complaint was filed. Bennett argues that his jury trial commenced 245 days after the criminal complaint was filed, and thus it is a violation of the state speedy trial rule, which requires a trial to commence within 180 days of the date on which the complaint is filed in cases where the defendant is held in pretrial incarceration. *See generally* Pa. R. Crim. P. 600(B)(1). He further argues that this delay also constitutes a violation of his federal constitutional right to a speedy trial.

The Superior Court and the PCRA court considered Bennett's ineffectiveness claim with respect to trial and appellate counsel's failure to advance a speedy trial claim. The state PCRA court, whose reasoning was explicitly adopted by the appellate court by reference, denied this claim on

its merits, finding:

> Defendant has based his calculations on the date his trial commenced, rather than on the correct calculation date, the date of voir dire. The criminal complaint against the Defendant was filed on October 27, 2008, voir dire was completed and the jury impaneled on April 13, 2009, some 14 days short of the 180 days required under Pa. R. Crim. P. 600. There is no Rule 600 or due process issue.

(Doc. 12-5, at 15–16).

> As the Third Circuit has previously recognized:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

*Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991); *see also Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, Bennett's claim that the delay violated his rights under the state speedy trial rule is simply not cognizable in this federal habeas proceeding.[6]

---

[6] This state-law claim is patently meritless in any event. *See Commonwealth v. Lamonna*, 373 A.2d 1355, 1360–61 (Pa. 1977) ("A trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire, or to opening argument, or to the

*(continued on next page)*

Moreover, the state court's rationale is a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which provides the controlling standard for evaluating ineffective assistance claims, and *Barker v. Wingo*, 407 U.S. 514, which provides the controlling standard for evaluating constitutional speedy trial claims. *See id.* at 530–33. Under *Barker*, a criminal defendant's Sixth Amendment right to a speedy trial cannot be "quantified into a specified number of days or months." *Id.* at 523; *see also Wells*, 941 F.2d at 256 ("Pennsylvania's 180-day rule does not define the contours of the federal constitutional right to a speedy trial."). Instead, the length of the delay is one of four factors[7] that are considered in evaluating a speedy trial claim. *Barker*, 407 U.S. at 530–33. But it is a threshold factor or "triggering mechanism" for the vesting of a constitutional speedy trial right: if the delay is not "presumptively prejudicial," then there is no need to even consider the other factors that go into the balance because there is no speedy trial claim. *Id.* at 530; *see*

---

hearing of any motions which had been reserved for the time of trial, or to the taking of testimony or to some other such first step in the trial.").

[7] The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. *See Barker*, 407 U.S. at 530–33.

*also Doggett v. United States*, 505 U.S. 647, 651–52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness."). Whether a delay is presumptively prejudicial depends on the "circumstances of the case." *Barker*, 407 U.S. at 530. The Supreme Court has acknowledged that delays approaching one-year may be presumptively prejudicial. *See Doggett*, 505 U.S. 647, at 652 n.1. The delay at issue in this case, 168 days between the filing of the criminal complaint and the empaneling of a jury,[8] falls short of being "presumptively prejudicial." *See United States v. Occhipinti*, 998

---

[8] As under Pennsylvania state law, federal courts have generally held that a jury trial "commences" upon selection (voir dire) of the jury. *See, e.g., United States v. Johnson*, 944 F.2d 396, 406–07 (8th Cir. 1991); *United States v. O'Driscoll*, 229 F. Supp. 2d 370, 373–74 (M.D. Pa. 2002) ("[I]t is the common understanding of lawyers and judges that trial commences with jury selection"). But even accepting Bennett's interpretation of "commencement" to mean that a jury trial does not commence until the presentation of opening arguments, witnesses, and evidence, the 245-day delay—eight months—at issue here does not "approach[] one year," *Doggett*, 505 U.S. at 652 n.1, and is not presumptively prejudicial. *See United States v. Kalady*, 941 F.2d 1090, 1095 (10th Cir. 1991) (delay of eight months was not presumptively prejudicial).

F.2d 791, 798 (10th Cir. 1993) (delay of 172 days was not presumptively prejudicial). Because the record establishes that the period of time between the filing of a criminal complaint against Bennett and the commencement of his jury trial was not presumptively prejudicial, Bennett's Sixth Amendment speedy trial claim is meritless, and his ineffective assistance claim premised upon this meritless speedy trial claim is likewise meritless.

Accordingly, it is recommended that the petition be denied on the merits with respect to Bennett's claim (6), that trial and appellate counsel were ineffective because they failed to advance a claim that the post-indictment delay in commencement of his trial violated his right to a speedy trial under the state speedy trial rule and the Sixth Amendment to the United States Constitution.

## III. RECOMMENDATION

Based on the foregoing, it is recommended that the petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**. It is further recommended that the Court decline to issue a certificate of appealability, as the petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v.*

*Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).


Dated: June 1, 2016                    ***s/ Joseph F. Saporito, Jr.***
                                       JOSEPH F. SAPORITO, JR.
                                       United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ALAN ROBERT BENNETT, JR.,

      Petitioner,

      v.

COMMONWEALTH OF
PENNSYLVANIA,

      Respondent.

CIVIL ACTION NO. 1:14-cv-01837

(KANE, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated June 1, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: June 1, 2016                    ***s/ Joseph F. Saporito, Jr.***
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge